## UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF LOUISIANA

## SHREVEPORT DIVISION

**ALONZO E. ALLEN**                                   **CIVIL ACTION NO. 16-1514-P**

**VERSUS**                                                   **JUDGE FOOTE**

**DR. PAMELA HEARNS, ET AL.**              **MAGISTRATE JUDGE HORNSBY**

## REPORT AND RECOMMENDATION

In accordance with the standing order of this court, this matter was referred to the undersigned Magistrate Judge for review, report and recommendation.

## STATEMENT OF CLAIM

Before the court is a civil rights complaint filed in forma pauperis by pro se plaintiff Alonzo E. Allen ("Plaintiff"), pursuant to 42 U.S.C. § 1983. This complaint was received and filed in this court on October 27, 2016. Plaintiff is incarcerated at the David Wade Correctional Center in Homer, Louisiana, and claims his civil rights were violated by prison officials. He names Dr. Pamela Hearns, the David Wade Correctional Center Staff, Bruce Fuller, Michelle Norris, Paula Millwee, L. Hamilton, Jeffery Jackson, Tammy Poole, Col. Evans, Captain Reinhart, Deborah Cody, Bill Martin, Joel Williams, Captain Kimble, Captain Hamilton, Warden Goodwin, Captain Riche, and T. Harris as defendants.

Plaintiff claims he suffers from arthritis, an enlarged prostate, and lupus which is currently inactive. He claims that he has tingling pain in his fingers and toes. He also claims that he has severe pain and aches in his joints. He claims that he occasionally has sharp pain in his lower legs.

Plaintiff arrived at David Wade Correctional Center on October 12, 2012. He claims that at that time, he took two pills a day for his rheumatoid arthritis and enlarged prostrate. He claims his pill intake has increased to as many as 98 pills per week. He claims he informed the medical staff that the additional medication was making him sick. He claims that when the medical staff discontinued a medication, they replaced it with another medication. He claims his body is chemically dependent on the medications and he suffers from different side effects. He claims his symptoms are being treated, but his underlying conditions are not being treated.

Plaintiff claims that since December 18, 2012, Dr. Pamela Hearns has been negligent in properly testing and examining him to determine the prognosis of his medical condition. He claims that because of Hearns's negligence, he has suffered prolonged pain. He also claims Hearns was negligent in not issuing the correct duty status.

Plaintiff claims he experiences severe pain daily. He claims he walks long distances while on the work crew. He claims the strain on his legs and feet causes severe pain. He claims the strenuous activities also cause his hemorrhoids to flare up. He claims his upper body has begun to go numb and this causes pain and discomfort.

Plaintiff claims that since December 18, 2012, Dr. Fuller has prescribed blood pressure medication for him which has made him sicker. He also claims Fuller used unsanitary tools to perform a surgery on him and he developed a staph infection. He also claims Fuller did not issue a proper duty status for his conditions.

Plaintiff claims registered nurse M. Norris sent him to work with extremely high blood pressure levels and while he was in severe pain. He claims Norris repeatedly charged

him for the same or similar complaints.  Plaintiff claims Norris assisted in the surgery that was performed with unsanitary tools.  He claims Norris plotted with Captain Richie, Captain Kimble, and other nurses to have him locked up and written up for malingering and aggravated work offenses.

Plaintiff claims nurse Paula Millwee was negligent in placing him on the doctor call out list in an untimely manner.  He claims white inmates with similar complaints are sent to specialists to receive quick and better care.  He claims that on October 18, 2016, Millwee wrote him up for malingering.  He claims his blood pressure was high and he had severe pain in his joints because of lupus.

Plaintiff claims Nurse Hamilton did not always check his vital signs.  He claims Hamilton refused to give him a duty status.

Plaintiff claims nurse Jeffery Jackson refused him his medication a few times because he was not in the call pill line due to no fault of his own.  He claims Jackson made him work with bleeding hemorrhoids.

Plaintiff claims nurse Tammy Poole has little compassion for inmates.  He claims Poole repeatedly charges him for the same or similar complaints.

Plaintiff claims Colonel Evans is hesitant to make a judgment call.  He claims Evans always sides with the lies of the medical and security departments.  He claims Evans found him guilty of malingering when he had a grievance pending against him in the administrative remedy procedure.

Plaintiff claims Captain Reinhart does not honor medical duty statuses.  He claims Reinhart threatens to write up inmates and/or lock them up if they do no work.

Plaintiff claims Classification Officer Deborah Cody has never given him a job change within his physical limitations. He claims Cody is racist because blacks are always last on her list for education and job programs.

Plaintiff claims nurse Bill Martin charges for visits even if the illness is chronic.

Plaintiff claims nurse J. Williams is racist. He claims Williams always threatens to write up inmates. He claims Williams will dispense the wrong medication to kill an inmate.

Plaintiff claims Captain Kimble had him locked up and placed on mental observation because he complained about ants all over his body and bed. He claims Kimble shows favoritism to white inmates.

Plaintiff claims Captain Hamilton will ask him why he is always in the infirmary. He claims he is afraid of him.

Plaintiff claims Warden Goodwin is unaware of all the wrongs that occur at David Wade Correctional Center. He claims he has written and talked to Warden Goodwin about his complaints, but nothing has changed.

Plaintiff claims his care was inadequate because the medical staff did not refer him to a specialist outside the facility. He claims he was not prescribed the right medication for the pain he suffers daily. He claims that when he arrived at DWCC, he was taking Flomax and Mobic. He claims the medical staff discontinued his Flomax and prescribed Cardura for him. He claims the Cardura caused his blood pressure to rise and his hands and feet to swell. He claims that other times his blood pressure would be too low, and he would faint. He claims the medical staff discontinued his Mobic until December 22, 2016.

Plaintiff was followed in the chronic care clinic every three months and annually by a physician for his chronic medical condition of high blood pressure [Doc. 11-1. p.3]. Plaintiff claims he was denied treatment for a cyst on his foot. On May 27, 2016, Plaintiff was examined by Nurse Norris because of foot pain. On June 2, 2016, Plaintiff was examined by Dr. Fuller for foot pain. Dr. Fuller diagnosed him with a probable ganglion cyst on his right foot which is a harmless tumor which will go away on its own. On June 8, 2016, Plaintiff made a repeat sick call regarding foot pain but failed to appear during the allotted times for an evaluation. He was examined additional times for a variety of complaints and did not complain of the cyst [Doc. 11-1, p. 1]. He claims he was denied treatment for hemorrhoids. Plaintiff was examined twice in June of 2016 and found to have hemorrhoids and constipation. He was ordered a stool softener, Metamucil, and a hemorrhoidal cream [Doc. 11-1, p. 2]. He claims he was also denied pain medication for toothaches and to have his tooth pulled. He claims he had to wait months to have a tooth pulled and his blood pressure would be high.

Plaintiff admits that he was seen on occasion and most of the time he did receive treatment even though he considered it to be minimal.

Accordingly, Plaintiff seeks to be placed in protective custody until he is transferred to another facility, to be examined by a specialist, and injunctive relief.

## LAW AND ANALYSIS

**Medical Care**

Plaintiff claims he was denied proper treatment for his medical conditions. Plaintiff filed this claim pursuant to 42 U.S.C. § 1983 of the Civil Rights Act which provides redress for persons "deprived of any rights, privileges or immunities" by a person acting under color of state law. The right protected under 42 U.S.C. § 1983 in matters which concern alleged denial of, or inadequate medical care is the Eighth Amendment prohibition against cruel and unusual punishment.

The lack of proper inmate medical care rises to the level of a constitutional deprivation under the Eighth Amendment of the United States Constitution only if the evidence shows that the prison officials showed "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976); See also Farmer v. Brennan, 511 U.S. 825, 835, 114 S. Ct. 1970, 1978 (1994). It is only deliberate indifference, "an unnecessary and wanton infliction of pain" or an act "repugnant to the conscience of mankind," that constitutes conduct proscribed by the Eighth Amendment. Estelle, 429 U.S. at 105-06, 97 S. Ct. at 292; See also Gregg v. Georgia, 428 U.S. 153, 96 S. Ct. 2909 (1976). Further, the plaintiff must establish that the defendants possessed a culpable state of mind. See Wilson v. Seiter, 501 U.S. 294, 297-302, 111 S. Ct. 2321, 2323-27 (1991); Farmer, 511 U.S. at 838-47, 114 S. Ct. at 1979-84.

A delay in medical care will violate the Eight Amendment only if the delay is based on deliberate indifference and results in substantial harm. Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993). In addition, disagreement with the diagnostic measures or

methods of treatment afforded by prison officials does not state a claim for Eighth Amendment indifference to medical needs. See Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997).

In this case, after a thorough review of Plaintiff's complaint, read in a light most favorable to him, the court finds that the facts alleged do not support a finding of deliberate indifference to serious medical needs. To the contrary, the record demonstrates that Defendants were attentive to the medical needs of Plaintiff. It has been consistently held that an inmate who has been examined by medical personnel fails to set forth a valid showing of deliberate indifference to serious medical needs. Norton v. Dimazana, 122 F.2d 286, 292 (5th Cir. 1997); Callaway v. Smith County, 991 F. Supp. 801, 809 (E.D. Tex. 1998); Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992).

The November 11, 2015 grievance response provided by Plaintiff states that he was followed in the chronic clinic every three months and annually by the physician for his chronic medical condition of high blood pressure. The grievance response further states that he was referred to be seen by DWCC physicians for his other complaints of feet pain and prostrate problems [Doc 5, p. 11]. The July 14, 2016 grievance response provided by Plaintiff states that Dr. Fuller examined him twice in the month of June of 2016 for hemorrhoids and constipation. The response further states that he was prescribed a stool softener, Metamucil, and a hemorrhoidal cream [Doc.5 p. 10].

On May 27, 2016 Plaintiff was examined by Nurse Norris because of foot pain. On June 2, 2016, Plaintiff was examined by Dr. Fuller for foot pain and diagnosed with a

harmless tumor that should resolve itself. On June 8, 2016, Plaintiff failed to appear for an appointment regarding his foot pain. He was examined additional times for a variety of complaints, and he did not complain about the foot cyst [Doc. 11-1, p.1].

Plaintiff admits the medical staff examined him and prescribed medications for his conditions. Plaintiff's complaint is devoid of factual allegations that would tend to show Defendants acted with a culpable state of mind or that their actions were "unnecessary and wanton." Furthermore, Plaintiff does not allege how the alleged delay in pulling his tooth was based on deliberate indifference.

Plaintiff disagrees with the treatment Defendants provided him. He claims he should have been referred to a specialist outside of the facility. He claims he was not prescribed the correct medication for his daily pain. As previously discussed, disagreement with the diagnostic measures or methods of treatment afforded by prison officials does not state a claim for Eighth Amendment indifference to medical needs.

Plaintiff's allegations, if accepted as true, may amount to a state law claim for negligence, a tort. However, mere negligence, neglect or medical malpractice does not amount to a denial of a constitutional right as these actions on the part of Defendants do not rise to the level of a constitutional tort. See Daniels v. Williams, 474 U.S. 327, 329-30, 106 S. Ct. 662, 664 (1986); Estelle, 429 U.S. at 106, 97 S. Ct. at 292; Lewis v. Woods, 848 F.2d 649, 651 (5th Cir. 1988). The fact that Plaintiff does not believe that his medical treatment was as good as it should have been is not a cognizable complaint under the Civil Rights Act. See Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985). Prisoners are not

constitutionally entitled to the best medical care that money can buy. See Mayweather v. Foti, 958 F.2d. 91 (5th Cir. 1992).

Accordingly, Plaintiff's medical care claims should be dismissed with prejudice as frivolous.

**Medical Fees**

Plaintiff claims Nurse Norris, Nurse Hamilton, and Nurse Poole repeatedly charged him for the same or similar complaints. He claims Bill Martin charges for visits for chronic conditions. Plaintiff does not have a constitutional right to free medical care. Hutchinson v. Belt, 957 F.Supp. 97 (W.D. La. 1996) (citations omitted). Furthermore, Plaintiff does not allege that he was denied medical treatment because he could not pay the fee.

Accordingly, Plaintiff's medical fee claims should be dismissed with prejudice as frivolous.

**Discrimination**

Plaintiff claims white inmates with similar complaints as his are sent to specialists to receive quick and better care. To prove a cause of action under 1983, Plaintiff must demonstrate that prison officials acted with a discriminatory purpose. Woods v. Edwards, 51 F.3d 577 (5th Cir. 1995). "Discriminatory purpose in an equal protection context implies that the decision maker selected a particular course of action at least in part because of, and not simply in spite of, the adverse impact it would have on an identifiable group." Id., citing United States v. Galloway, 951 F.2d 64, 65 (5th Cir. 1992).

Plaintiff has failed to allege a discriminatory purpose.  Plaintiff rests his claim only on his personal belief that discrimination played a role in which inmates were sent to specialist.

Accordingly, Plaintiff has failed to allege a viable equal protection claim and this claim should be dismissed as frivolous.

**Retaliation**

Plaintiff claims he was retaliated against because he filed a grievance in the administrative remedy procedure.  He claims Col. Evans found him guilty of malingering. To state a claim of retaliation an inmate must allege the violation of a specific constitutional right and be prepared to establish that but for the retaliatory motive the complained of incident–such as the disciplinary report for malingering-would not have occurred. Woods v. Smith, 60 F.3d 1161 (5th Cir. 1995), citing Mt. Healthy City School Board District Bd. Of Education v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

The retaliatory motive alleged by Plaintiff is entirely conclusory as he provides no specific allegations showing that "but for" this motive he was charged with malingering.

Accordingly, Plaintiff's retaliation claims should be dismissed with prejudice as frivolous.

**False Reports**

Plaintiff claims Nurse Norris, Captain Richie, Captain Kimble, and others plotted to have him written up and punished for malingering and aggravated work offenses.  He claims that on October 18, 2016, Nurse Millwee wrote him up for malingering even though his blood pressure was high, and he had severe pain in his joints because of lupus.  In Nurse

Millwee's report, she stated that she examined him and found there to be no clinical significance to his complaint [Doc. 5, p. 9].

To the extent Plaintiff claims that a false disciplinary report was filed against him, Plaintiff has no right which protects him from being charged with a disciplinary offense. This is true regardless of the truth of the initial report.  Freeman v. Rideout, 808 F.2d 949, 952 (2nd Cir. 1986); Hanrahan v. Lane, 747 F.2d 1137, 1140-41 (7th Cir. 1984); Cardine v. Tucker, 23 F.3d 406 (Table), 1994 U.S. App. LEXIS 17566 (6th Cir. 1994).

Accordingly, Plaintiff's claim against Defendants is not cognizable because he has no constitutional protection from being wrongly charged with a disciplinary offense.

**Conclusory Allegations**

Plaintiff claims Captain Reinhart does not honor medical duty statuses.  Plaintiff claims Officer Cody is racist because blacks are always last on her list for education and job programs and she has never given him a job change within his physical limitations. Plaintiff claims Nurse Williams is racist and threatens to write-up inmates.  He further claims that Nurse Williams will dispense the wrong medication to kill an inmate.  He claims Captain Kimble shows favoritism to white inmates.  Plaintiff claims he is afraid of Captain Hamilton because he asks him why he is always in the infirmary.

A Section 1983 plaintiff has long been required to plead his case with "factual detail and particularity," not mere conclusory allegations.  Elliot v. Perez, 751 F.2d 1472, 1473 (5th Cir. 1985); Hale v. Harney, 786 F.2d 688 (5th Cir. 1986).  The Supreme Court has abolished this heightened pleading standard for claims against municipalities, Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 113 S.Ct.

1160 (1993), but the requirement remains firmly in place for claims against individual public officials.  See Schultea v. Wood, 47 F.3d 1427 (5th Cir.1995) (en banc).

In this case, Plaintiff has named individual prison officials as defendants and is therefore required to give factual details regarding his alleged constitutional rights violations.  Plaintiff has failed to do so as to these claims.

Accordingly, these claims should be dismissed for failure to state a claim on which relief may be granted.

## CONCLUSION

Because Plaintiff filed this proceeding in forma pauperis ("IFP"), if this court finds Plaintiff's complaint to be frivolous, it may dismiss the complaint as such at any time, before or after service of process, and before or after answers have been filed.  See 28 U.S.C. § 1915(e); Green v. McKaskle, 788 F.2d 1116, 1119 (5th Cir. 1986); Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985).  District courts are vested with extremely broad discretion in making a determination of whether an IFP proceeding is frivolous and may dismiss a claim as frivolous if the IFP complaint lacks an arguable basis either in law or in fact.  See Hicks v. Garner, 69 F.3d 22 (5th Cir. 1995); Booker v. Koonce, 2 F.3d 114 (5th Cir. 1993); Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827 (1989).

For the reasons heretofore stated, it is recommended that Plaintiff's complaint be **DISMISSED WITH PREJUDICE** as frivolous under 28 U.S.C. § 1915(e).

## OBJECTIONS

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and

Recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objection within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendations set forth above, within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking, on appeal, the proposed factual findings and legal conclusions that were accepted by the district court and that were not objected to by the aforementioned party.  See Douglas v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

**THUS DONE AND SIGNED**, in chambers, in Shreveport, Louisiana, on this 25th day of February 2020.

Mark L. Hornsby
U.S. Magistrate Judge